STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

13-799 consolidated with 13-918

DARNELL CARTER, ET AL.

VERSUS

STEAK HOUSE STEAKS, INC., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20112374
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Sylvia R. Cooks, J. David Painter, and Shannon J. Gremillion, Judges.

AFFIRMED.

Stephen N. Elliott
Carl J. Giffin, Jr.
Howard B. Kaplan
Bernard, Cassisa, Elliot & Davis
3838 N. Causeway Blvd, Suite 3050
Metairie, LA 70002
(504) 834-2612
COUNSEL FOR DEFENDANTS/APPELLEES:
    Steak House Steaks, Inc.

George B. Hall, Jr.
Katie Whitman Myers
Phelps Dunbar, L.L.P.
365 Canal St., Suite 2000
New Orleans, LA 70130-6534
(504) 566-1311
COUNSEL FOR DEFENDANT/APPELLEE:
    Catlin Specialty Insurance Company

Richard E. King
Jennifer L. Simmons
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras St., Suite 4040
New Orleans, LA 70139
(504) 525-6802
COUNSEL FOR DEFENDANTS/APPELLEES:
    Louisiana Capital Foods, LLC
    CampNations
    Steak House Steaks, Inc.
    James Nations, Jr.

Lamarre T. Elder
Michael J. Harris
Law Offices of Pius A. Obioha & Associates
1550 N. Broad St.
New Orleans, LA 70119
(504) 265-0437
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Darnell Carter
    Michelle Carter

**GREMILLION, Judge**.

In this consolidated matter, the plaintiffs, Darnell and Michelle Carter, the natural parents of Kyris Carter, deceased, appeal the trial court's grant of summary judgment in favor of the defendants, CampNations, LLC and Louisiana Capital Foods, LLC (the event organizer and landowner defendants), and James Nations, Jr., Steak House Steaks, Inc., and Caitlin Specialty Insurance Company[1] (Steak House defendants). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Kyris Carter was an employee of Steak House Steaks, Inc. Shortly after leaving his employment with Steak House Steaks, Kyris, who was twenty-four years old, attended a company gathering on October 3, 2010, with his best friend, Wisdom Adikema. The party was located at the company's vacation rental on False River in Pointe Coupee Parish. Steak House Steaks decided to have the party to reward its employees for meeting certain goals. The property was owned by CampNations, LLC, and the event was organized by Louisiana Capital Foods, LLC. James Nations, Jr. owns CampNations, LLC. Tragically, Kyris drowned in False River after jumping off the second story of a pier. His parents thereafter filed a lawsuit for damages.

All defendants filed motions for summary judgment, which the trial court granted. The trial court found that there was no genuine issue of material fact that Kyris jumped off of a pier located at a neighboring property rather than any

---

[1]James Nations, Jr., is the owner of Steak House Steaks, Inc., which is insured by a policy issued by Caitlin Specialty Insurance Inc. They are the defendants in the consolidated matter. See 13-799 (La.App. 3 Cir. __), __ So.3d __.

property owned by defendants.[2]  The Carters filed a motion for new trial which was denied.  The Carters now appeal.

## ISSUES

In docket number 13-918, defendants assign as error:[3]

1.  The Trial Court erred in granting Defendant's Motion for Summary Judgment despite the following documented material issues of fact inherent in the Affidavits and other evidence presented by Plaintiffs and Defendant:

    a.  Whether or not Kyris Carter entered False River and drowned from the property located at 9353 Island Rd, Ventress, LA, as referenced in the Pointe Coupee Sherriff's Office's Investigative Report;

    b.  Whether there was an unreasonable risk of injury;

    c.  Whether or not Kyris Carter voluntarily jumped into False River, leading to his drowning death;

    d.  Whether or not any witness, as referenced in Defendant's Memorandum in Support of Motion for Summary Judgment, saw Kyris Carter "voluntarily jump into the subject water from an adjacent, neighboring property",

    e.  Whether or not Wisdom Adikema, as referenced as a witness in Defendants' Exhibit C, affidavit of Gerald Major, gave conflicting statements to Mr. Major (Defendants' insurance claims adjuster), Officer Clyde McCoy (Plaintiffs' independent investigator), Darnell and Michelle Carter (parents of the decedent), and Officer Torrick Friels (Point Coupee Sheriff's Officer who responded to the scene of the drowning incident);

    f.  Whether or not the nonexistence of lifeguards, lifejackets, inadequacy of signage, and lack of other life saving, preventative mechanisms, rendered defendants' property defective; and

---

[2] The CampNations address is 9353 Island Road; the neighboring property address is 9351 Island Road.  The owners of the neighboring property, known only in the record as Mia and Stuart, were not home at the time of this accident.

[3] In 13-799, the assignments of error are identical except that number two is omitted.

2

g. Whether or not adequate life saving, preventative measures were taken by the organizers of this company gathering given the fact that alcohol was to be served to attendees at a night-time gathering adjacent to False River.

2. The trial court failed to apply any scrutiny to the affidavit and **summaries** of recorded statements provide[d] by the Defendants in support of their motions for summary judgment.

3. The trial court erred in relying on the affidavit of a third person who had no direct knowledge of the drowning incident.

## DISCUSSION

An appellate court reviews a grant of summary judgment de novo, applying the same standards as would a trial court. *Schroeder v. Bd. of Supervisors. of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966(c)(2), as amended by Act 483 of 1997, provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential facts of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie,* 98–2821 (La. 9/8/99), 744 So.2d 606.

The Carters asserted a negligence theory under La.Civ.Code art. 2317.1, which states:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

The determination of whether a person has custody or garde of a thing such that he will be liable for any damages it may cause is a factual determination. *Rando v. Anco Insulations, Inc.*, 08-1163, 1169 (La. 5/22/09), 16 So.3d 1065. Plaintiffs argue that there is a genuine issue of fact as to whether Kyris jumped off a neighboring pier and that even if he did, defendants were still liable because there was an "implied and explicit invitation from the enterprise's employees to use the [neighbor's] pier for jumping into the river."

Plaintiffs argue that the trial court failed to scrutinize the affidavits and recorded testimony because the witnesses' summarized statements only mentioned the neighboring pier a month after the accident occurred.

Plaintiffs further argue that the trial court failed to question the veracity of the statements made by the witnesses because the coroner's report found no alcohol in Kyris's body, whereas the witnesses all testified that he had a small amount of alcohol at the party. Further, plaintiffs argue that the insurance adjustor's affidavit should be afforded little weight because it was based on second-hand knowledge. Finally, plaintiffs argue that the trial court failed to consider the fact that there were competing affidavits.

Four eyewitnesses to the accident stated that Kyris jumped off the neighboring second-story pier and accidentally drowned. The neighbor's property was separated from the CampNations address by a fence, but three party attendees,

4

Adikema, Kyris, and Ronald Houston, walked around it at the end of the yard where the fence meets the river. All of the witnesses said that Kyris was alone on the second story of the pier immediately prior to jumping and that several rescue attempts were made, but Kyris resisted assistance because he was panicked.

The evidence submitted in support of the motion for summary judgment included:

The affidavit of Gerald Major, the insurance adjuster who investigated the accident, who determined that Kyris voluntarily jumped from the neighboring pier based on recorded statements he obtained from Adikema, Houston, Robert Wright, and Nora Bridges, who were all witnesses to the accident. Major had been an insurance adjuster for nearly twenty-five years at the time he questioned the witnesses.

Major's recorded statement summaries were attached as exhibits. They all note the location of the accident as "9353 Island Road, Ventress, LA," the location of CampNations, LLC.

Bridges' statement revealed that she witnessed the accident. She said that she was standing at the end of the CampNations' pier (that was a few feet off of the water) and that Adikema jumped off the second story of the neighboring pier, almost drowning, but was pulled out of the water by Houston who was waiting in a jet ski with a life preserver. She said that before anyone could tell Kyris not to, he jumped off of the second story of the pier. Houston attempted to rescue him but Kyris was fighting him off because he was panicked.

Houston's statement indicated that he had jumped off of the second story of the neighbor's pier. He was waiting in the water with a jet ski and life preserver when Adikema jumped. He had to pull Adikema out of the water. Kyris then

jumped, and Houston tried to rescue him, but Kyris was panicking and kept pulling him under the water. Houston feared he would drown also because Kyris would not let go of him, and he finally had to push him off so that he could get out of the water.

Adikema's recorded statement indicated that he and Kyris were best friends and had known each other since they were twelve years old. Adikema stated that he and Kyris jumped from the second story of the neighbor's pier. He said that although he was initially scared to jump off of the pier, five or six people had already jumped, so he changed his mind. Adikema jumped off of the second story of the neighbor's pier immediately prior to Kyris's jump off of the pier. Adikema admittedly could not swim very well and was rescued by Houston, who also attempted to rescue Kyris.

He knew he could not swim well and "almost drowned," but he remembered to remain calm while Houston rescued him. Adikema said that he got out of the water and was going in to change his clothes when Kyris jumped. He said Kyris panicked and was "fighting and kicking the whole way" while Houston attempted to rescue him. Adikema said that Kyris could not swim at all but that he could swim a little bit.

Wright's recorded statement indicated that he did not see Kyris jump, but he witnessed the struggle in the river when Houston attempted to rescue Kyris. He said that prior to the accident they were talking about jumping off of the neighbor's two-story pier. Wright was nervous about the jump because Kyris did not seem comfortable so he manned a jet ski in the river in case help was needed.

James Palmer, another party attendee, stated that he saw Kyris, Houston, and Adikema walk onto the neighboring property and go up to the second story of the

6

pier, although he was inside at the CampNation's address when Kyris actually jumped. He did see Houston jump. Palmer felt that Houston was pressuring Adikema and Kyris to jump.

The Pointe Coupee Parish Coroner's Office issued a certificate of death that described how the accident occurred as an "accidental drowning." The narrative of events by the coroner's office also corroborate the witnesses' statements. The Pointe Coupee Parish Sheriff's Office report of witness statements taken the night of the accident are the same as the witnesses' statements to Major. The sheriff's office concluded that all the witnesses' statements gave the same version of events leading up to the drowning; that no foul play was indicated; and that the drowning was ruled accidental. Also, the written statements made to the sheriff's office by the four eyewitnesses convey the same series of events.

In opposition to the motions for summary judgment, plaintiffs provided the affidavit of Clyde McCoy, whom plaintiffs employed to investigate the accident. McCoy concluded that it was unusual that Kyris would jump off the pier knowing that he could not swim and that he was pressured to do so by his friends. He determined that the event was the result of a dare and that it occurred at "9353 Island Road, Ventress, LA, at a property owned and operated by Mr. and Mrs. James Nations[.]"

Affidavits of Michelle and Darnell Carter stated that authorities confirmed that the drowning took place at "9353 Island Rd." An affidavit of Darnell Carter stated that Adikema told him, "He [Kyris] didn't jump." He said that he was never informed that Kyris had jumped from the second story of the neighbor's pier.

The various reports of the accident and ensuing investigation list the address of the accident where the party was held, i.e., the CampNations property. This fact

is insufficient to controvert that Kyris jumped from the second story of the neighbor's pier. The police and emergency responders arrived at the CampNation's address because that is where the 911 call was made and where all of the witnesses were located. The listing of the CampNation's address on the various reports does not negate all of the evidence that Kyris jumped off of the second-story of the neighbor's pier. As a preliminary matter, the plaintiffs offered no evidence to controvert the fact that Steak House Steaks and Nations did not own the 9353 Island Road Property. Thus, regardless of the location of the pier from which Kyris jumped, Steak House Steaks and Nations owned neither and undoubtedly could not be attributed any premise liability fault.

Additionally, there is no genuine issue of fact that Kyris jumped off of the neighboring two-story pier. Every witness stated that Kyris jumped off the second story of the neighbor's pier. Plaintiffs produced no evidence to the contrary. Further, plaintiffs would be unable to prove that CampNations had custody or garde of its neighbor's pier. Even if we assumed that the accident occurred on the property of one of the defendants, there simply was no duty by the defendants to prevent a twenty-four year old man who knows that he cannot swim from voluntarily jumping off a second-story pier. Further, plaintiffs could not suggest that a duty arose due to the serving of alcohol at the party as they admit that no alcohol was found in Kyris' system.

Plaintiffs try desperately to point out inconsistencies in witness statements, but there are none of significance. Whether Kyris had ingested a small amount of alcohol is immaterial. The Coroner's lab report found no alcohol in Kyris' system. Plaintiffs argue that the accident occurred at 9353 Island Road and claim that all of the witnesses who testified that it occurred at the neighbor's pier were incorrect.

8

Plaintiffs further insinuate that a conspiracy amongst the witnesses occurred because one of them purposely or accidentally pushed Kyris into the water. There simply is no evidence to support these baseless accusations. Kyris accidentally drowned after voluntarily jumping off the second story of the neighbor's pier. While extremely tragic, plaintiffs will be unable to prove that this unfortunate accident was the fault of any of the defendants.

## CONCLUSION

The judgment of the trial court granting summary judgment in favor of the defendants in 13-799, James Nations, Jr., Steak House Steaks, Inc., and Caitlin Specialty Insurance Company, and 13-918, CampNations, LLC, and Louisiana Capital Foods, LLC, is affirmed. All costs of this appeal are assessed against the plaintiffs/appellants, Darnell and Michelle Carter.

**AFFIRMED**.